# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| RHONDA CARACCIOLO,<br>　　　　　Appellant, | DOCKET NUMBER<br>DC-0432-22-0466-I-1 |
| 　　　　v. | |
| FEDERAL DEPOSIT INSURANCE<br>　　CORPORATION,<br>　　　　　Agency. | DATE: August 7, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Rhonda Caracciolo, Raleigh, North Carolina, pro se.

Duane Pitt, Esquire, Atlanta, Georgia, for the agency.

Jill Weissman, Esquire, New York, New York, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

## REMAND ORDER

¶1    The appellant has filed a petition for review of the initial decision, which affirmed her removal for failure to meet a condition of continued employment.

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2        The appellant was a CG-0570-09 Financial Institution Specialist in the agency's Division of Depositor and Consumer Protection in Raleigh, North Carolina.  Initial Appeal File (IAF), Tab 1 at 1, 8.  On June 27, 2016, the date that the appellant was appointed, she signed an agreement with the agency acknowledging that she "must obtain a commission with the FDIC in Risk Management, Compliance, Resolutions, or Receivership Management within [4] years (48 months)" of her initial appointment, and that she understood "that the FDIC [would] proceed with adverse action to effect [her] removal" from federal service if she did not obtain her commission within 4 years.  IAF, Tab 7 at 80-81.  In June 2020, the agency extended the 4-year deadline by an additional year due to COVID-19.  IAF, Tab 8 at 127-28.

¶3        The agency's Examiner Training and Development Policy states that the Regional Director (RD) determines whether to promote a pre-commissioned examiner to a commissioned examiner based on core examination school results or comparable experience; technical evaluation (TE) results; individual development plan (IDP) and benchmark completion; on-the-job (OTJ) performance; and Field Supervisor recommendation, and that Field Supervisors "will consider OJT performance, TE results, core school performance, and IDP completion when making a commissioning recommendation." *Id.* at 270, 272.  The policy further provides that "[t]he RD has delegated authority to commission a candidate who, after two attempts, does not achieve a score of 70 percent or higher on the TE," and that "[t]he decision to commission someone in this scenario will be rare and will require notice to" additional personnel.  *Id.* at 272.

¶4    The appellant sat for her first TE on April 23, 2021 and scored 51% overall.[2]  IAF, Tab 7 at 23.  The agency subsequently placed her on an IDP to improve her "technical knowledge" in preparation for retaking the TE, which she completed.  IAF, Tab 8 at 238-39.  The appellant retook the TE a second time on June 26, 2021 and scored 50% overall.  IAF, Tab 7 at 24.  On June 28, 2021, the appellant's Field Supervisor issued a letter stating, "I do not recommend Financial Institution Specialist Caracciolo be promoted to Commissioned DCP Examiner," and discussed factors such as the appellant's school results, TE scores, and her job performance.  *Id.* at 21-22.  On July 22, 2021, the Field Supervisor proposed the appellant's removal for failure to meet a condition of continued employment, per her agreement with the agency on June 27, 2016.  *Id.* at 16-19.  The charge specified that the appellant's "TE results, considered together with the other criteria for commissioning, have led your Field Supervisor to determine that you are not suitable for a commission," and that, because the appellant failed to receive her commission by June 27, 2021, she failed to meet a condition of continued employment.  *Id.* at 17.  The appellant did not respond, and on September 28, 2021, the deciding official sustained the appellant's removal effective October 8, 2021.  *Id.* at 13-15.

¶5    On October 2, 2021, the appellant filed a formal complaint of discrimination alleging that agency had, among other things, discriminated against her based on race and age, and that it had retaliated against her for filing an informal Equal Employment Opportunity (EEO) complaint on July 6, 2021.  IAF, Tab 1 at 13.  On May 24, 2022, after investigation, the appellant received a Final Agency Decision (FAD) that found that she did not prove that she was subjected to discrimination based on race, age, or retaliation.  *Id.* at 4, 13-25.  The appellant subsequently filed the instant timely Board appeal challenging her removal and the agency's failure to recommend her for commissioning and raising the

---

[2] The agency's policy states that any score below 70 falls into the "Low band," scores from 70 to 74 fall into the "Mid band," and scores of 75 or higher fall into the "High band."  *See* IAF, Tab 7 at 24.

affirmative defenses of disparate treatment discrimination based on her race and age and reprisal for prior EEO activity.[3]  *Id.* at 4; IAF, Tab 18, Tab 20 at 5-9. The administrative judge issued an order informing the appellant how to prove her affirmative defenses, IAF, Tab 19, and an order setting forth the burden of proof and elements for the agency's charge of failure to maintain a condition of continued employment, IAF, Tab 23 at 2.

¶6    After holding the requested hearing, the administrative judge issued an initial decision affirming the agency's removal action.  IAF, Tab 28, Initial Decision (ID) at 1, 12.  The administrative judge sustained the charge because he found that commissioning was a condition of the appellant's continued employment and that the appellant failed to meet that condition because she did not achieve a passing score of 70% on her TE.  ID at 4-5.  He noted that there was nothing in the record to suggest that the agency's commissioning requirement was patently unfair or the result of bad faith and that, even though the agency's policy allowed for the possibility that a candidate could receive a commission without scoring at least 70% on the TE, there was no evidence the agency had ever commissioned someone without a passing score.  ID at 4-5.  The administrative judge found that the appellant did not prove her claims of race and age discrimination, ID at 5-9, and that she did not show that her removal was in reprisal for her prior EEO activity, ID at 9-10.  Finally, the administrative judge concluded that the agency proved nexus, ID at 5, and that the penalty of removal was reasonable, ID at 10-11.

¶7    The appellant has filed a petition for review of the initial decision.  Petition for Review (PFR) File, Tab 1.  She reasserts that she was not treated as favorably as another specific employee whom she claims was given additional support and

---

[3] In cases such as this, when an employee files a timely mixed-case complaint with the agency, and the employing agency issues a FAD on the employee's discrimination claims that provides the employee with notice of her right to file an appeal with the Board, the employee's Board appeal must be filed with the Board within 30 days of her receipt of the agency's resolution or final decision on the discrimination issue. *Montalvo v. U.S. Postal Service*, 91 M.S.P.R. 671, ¶ 5 (2002); 29 C.F.R. § 1614.302(d).

information, and that the administrative judge failed to apply an FDIC regulation concerning her allegation that this other employee committed a breach of academic integrity. *Id.* at 4. The agency has filed a response. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>We discern no error in the administrative judge's finding that the appellant did not establish her affirmative defense of disparate treatment discrimination based on her race or age.</u>

¶8    On review, the appellant's arguments concern her affirmative defense of disparate treatment discrimination based on her race and age. *See* PFR File, Tab 1. She claims that a male colleague of a different race and age—who was commissioned after successfully challenging one the TE test questions, which pushed his score up to 70%—received additional support and information from a senior employee that the appellant did not. *Id.* at 4. The appellant argues that this alleged information and support enabled her colleague to pass the TE and remain employed with the agency, and that this behavior was unethical and a breach of an agency regulation regarding academic integrity. *Id.* However, the appellant raised this argument below and the administrative judge properly resolved it. *See* IAF, Tab 20 at 7; ID at 7-9. Specifically, in the initial decision the administrative judge explained that although the appellant appeared "sincere in her belief" of this version of events, her assertions were belied by the record. ID at 8-9. The administrative judge noted that the record included an affidavit from the named senior employee that denied advising the colleague at issue to appeal a TE test question, and even denied knowledge as to how a candidate would raise such a challenge. ID at 7-9; *see also* IAF, Tab 8 at 77-78. The administrative judge concluded that there was no evidence that the appellant's colleague was given an unfair advantage. ID at 9. The appellant's argument on review simply disagrees with the administrative judge's finding and does not establish a basis for review. *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (discussing that the mere reargument of

issues already raised and properly resolved by the administrative judge below does not establish a basis for review).

¶9        Although the appellant also asserts in her petition that the administrative judge failed to apply an agency regulation regarding academic integrity in his analysis of this issue, the appellant did not make this argument below and thus the Board need not consider it.  PFR File, Tab 1 at 4; *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).  As a result, the appellant's arguments on review are unavailing.[4] Nevertheless, as discussed below, we find that remand is necessary to correct an error with the administrative judge's analysis of the charge.

Remand is necessary to properly address whether the agency established its charge.

¶10      The charge of failure to fulfill a condition of employment contains two elements: (1) the requirement at issue is a condition of employment; and (2) the appellant failed to meet that condition.  *Gallegos v. Department of the Air Force*, 121 M.S.P.R. 349, ¶ 6 (2014).  Absent evidence of bad faith or patent unfairness, the Board defers to the agency's requirements that must be fulfilled for an individual to qualify for appointment to, or retention in, a particular position.  *Id.*

¶11      In this appeal, the condition of employment is a commission with the agency in Risk Management, Compliance, Resolutions, or Receivership Management.  IAF, Tab 7 at 80.  It appears undisputed that a commission is a requirement for the appellant's position, and thus, the first element of the charge is satisfied.  *See* IAF, Tab 5 at 4, Tab 20 at 5-9.  Thus, the issue is whether the second element—that the appellant failed to meet a condition of employment—is satisfied.

---

[4] The appellant does not challenge the administrative judge's finding that she did not establish that her removal was in reprisal for EEO activity, and we discern no error in that finding.  *See* PFR File, Tab 1.

¶12    In the appellant's initial appeal filing, she indicated that she was challenging the agency's removal decision as well as the agency's "[f]ailure to recommend [her] for commissioning." IAF, Tab 1 at 4. In a later filing, the appellant again indicated multiple times that she was disputing not only the agency's removal decision but its decision not to commission her. *See* IAF, Tab 20 at 7-9. As noted above, in the initial decision, the administrative judge concluded that the agency proved that commissioning was a condition of the appellant's continued employment, and that the appellant did not meet this condition because she did not achieve an overall score of 70% on either of her attempts of the TE. ID at 4-5.

¶13    However, the Board has held that in appeals where a charge of failure to maintain a condition of employment is based on the employing agency's withdrawing or revoking its certification or other approval of the employee's fitness or other qualifications to hold her position, the Board's authority generally extends to review of the merits of that withdrawal or revocation. *Adams v. Department of the Army*, 105 M.S.P.R. 50, ¶¶ 10, 19 (2007), *aff'd*, 273 F. App'x 947 (Fed. Cir. 2008). In conducting that review, the Board determines whether, under the circumstances, the agency acted reasonably in denying the required certification or approval. *See id.*, ¶ 19. In *Adams*, for example, the agency suspended the appellant's computer access and then removed him for failure to maintain access to the agency's computer system. *Id.*, ¶ 6. Although the agency in that appeal argued that the Board lacked the authority to review the merits of the decision to suspend computer access because it was not an appealable adverse action, the Board found that, when a removal is based on the failure to possess a certification or similar qualification, it has the authority to review the merits of

the agency's revocation of the certification or similar qualification necessary for the employee to hold his position.[5, 6]  *Id.*, ¶¶ 9-10, 19.

¶14        Although this case does not involve a situation where the agency specifically "withdrew" or "revoked" a necessary certification, the agency here explicitly controlled whether or not the appellant received a commission, and thus the principle discussed in *Adams* is still applicable.  *See* IAF, Tab 8 at 270. Specifically, as noted above, the agency's Examiner Training and Development policy provides that an agency RD determines whether to promote a pre-commissioned examiner to a commissioned examiner based on the consideration of various factors, including employee performance and a recommendation from the employee's Field Supervisor.  *Id.*  The policy also provides for RD discretion to commission candidates who, like the appellant, did not score 70% or higher on the TE.  *Id.* at 272.  As a result, the agency's policy provides that the decision to promote a candidate to a commissioned examiner is up to agency officials, based objective, subjective, and discretionary factors.  *Id.* at 270-72.  Because of this, the agency's charge of failure to maintain a continued condition of employment here was thus based on its own approval of the appellant's fitness or other qualifications to commission her, and therefore the principle discussed in *Adams* is relevant.  Indeed, *Adams* is particularly pertinent

---

[5] The certification at issue in this appeal and in the appeals discussed in this decision do not involve national security determinations, which the Board lacks authority to review. *Adams*, 105 M.S.P.R. 50, ¶ 11; *see Department of the Navy v. Egan*, 484 U.S. 518, 530-31 (1988).

[6] The Board has followed the principle applied in *Adams* in other cases as well.  *See, e.g.*, *Jacobs v. Department of the Army*, 62 M.S.P.R. 688, 694-95 (1994) (reviewing a security guard's disqualification from the agency's Chemical Personnel Reliability Program based on his alleged misconduct); *McGillivray v. Federal Emergency Management Agency*, 58 M.S.P.R. 398, 402 (1993) (finding that the Board had the authority to consider the reasons underlying the agency's decision to revoke the appellant's procurement authority); *Siegert v. Department of the Army*, 38 M.S.P.R. 684, 686-88, 691 (1988) (finding that the Board had the authority to review the actions of the agency credentialing committee and remanding the appeal to the administrative judge to address that issue).

here where the appellant's Field Supervisor recommended that the appellant not be promoted to a commissioned examiner, IAF, Tab 7 at 21-22, *and* proposed her removal because he determined that the appellant was "not suitable for a commission," *id.* at 17. Consequently, given this precedent, and because the appellant challenged the merits of the agency's decision not to commission her, the administrative judge should have considered the merits of the agency's decision not to commission the appellant and whether it was reasonable. *See Adams*, 105 M.S.P.R. 50, ¶ 19.

¶15 Accordingly, because the administrative judge failed to fully identify the issues in this appeal, and the parties did not have the opportunity to fully develop the record on these issues, remand is required. On remand, the administrative judge shall afford the parties the opportunity to conduct discovery and submit additional evidence and argument. The administrative judge shall hold a supplemental hearing, if requested by the appellant, and shall issue a new initial decision addressing the agency's charge, nexus, and penalty. The administrative judge may, as appropriate, adopt his previous findings regarding the appellant's affirmative defenses. However, if the argument or evidence on remand regarding whether the agency established the charge affects the administrative judge's analysis of the appellant's affirmative defenses, he should address such argument or evidence in the remand initial decision. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (stating that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and legal reasoning, as well as the authorities on which that reasoning rests).

**ORDER**

¶16     For the reasons discussed above, we remand this case to the Washington regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                         *Gina K. Grippando*
                                       _____
                                       Gina K. Grippando
                                       Clerk of the Board

Washington, D.C.